STEELE v. ROBINSON.

4-9765 251 S. W. 2d 1001

Opinion delivered October 27, 1952.

*Clarence Clifton, J. H. Spears, J. W. Kirkpatrick* and *John B. Mack,* for appellant.

*Armstrong, McCadden, Allen, Braden & Goodman, Lowell W. Taylor, Hale & Fogleman* and *Barrett, Wheatley & Smith,* for appellee.

GEORGE ROSE SMITH, J. This is an effort by the two surviving bodily heirs of Sallie Haden to regain two 160-acre tracts that have been out of the Haden family's possession for about twenty-five years. In 1895 the property was conveyed to the plaintiffs' ancestor, Sallie Haden, and to her heirs by J. T. Haden. Sallie Haden, after having obtained deeds from her own children, sold the land to the Bank of Crittenden County in 1926. The appellees, remote grantees of the Bank, rely upon the title conveyed by Sallie Haden in 1926. The main question in the case is whether Sallie Haden had a life estate with (a) a vested remainder in her children or (b) a contingent remainder in her bodily heirs.

In the court below the chancellor sustained demurrers to the separate complaints filed by the two appellants. These complaints, with their exhibits, allege that in 1895 C. A. Jenkins conveyed this land to Sallie Haden "and unto her heirs by her present husband, J. T. Haden, and assigns forever." It is shown that J. T. and Sallie Haden had eight children in all. One died in infancy, without issue, before the execution of the 1895 deed. Three others died in infancy, without issue, between 1900 and 1911. In 1912 the four surviving children gave their mother, Sallie Haden, a warranty deed to the property. Their father, J. T. Haden, died in 1917, and in 1918 these four children again conveyed the land to their mother, this time by a quitclaim deed.

One of the four children, Carrie, died without issue a few months after the execution of the quitclaim deed in 1918. Another, Hugh, died in 1922, leaving as his only descendant a daughter, Huella Haden Steele, who is one

of the two plaintiffs. In 1926 Sallie conveyed the land to the Bank. The next death was that of Sallie herself, who died January 4, 1948. Thirteen days later one of her two surviving children, Thurman, died intestate and without issue. The fourth child, Irene Haden Cockrill, is still living and is the other plaintiff. In short, the two plaintiffs are Sallie Haden's child and grandchild.

It is the plaintiffs' contention that the 1895 deed conveyed a life estate to Sallie Haden with a contingent remainder to her bodily heirs. From this premise it is argued that under the long line of cases beginning with *Horsley* v. *Hilburn,* 44 Ark. 458, Sallie's children had no interest which they could convey during their mother's lifetime. Upon this theory it is contended that upon Sallie's death in 1948 the remainder vested in equal thirds in Thurman Haden and the two plaintiffs. It would follow that upon Thurman's death the plaintiffs inherited his interest and became the sole owners of the land.

The plaintiffs' chain of reasoning depends for its validity upon the initial assertion that the deed to Sallie Haden created a contingent remainder in her bodily heirs. If, on the other hand, that deed created a vested remainder in Sallie's children it is evident that the children transferred their interest to Sallie, and she in turn conveyed a perfect title to the Bank.

In theory the distinction between a vested and a contingent remainder is clear-cut, but in practice the distinction is apt to be troublesome, since the language in a particular deed or will may fall very near the borderline. Although in this case we need not undertake a complete analysis of the subject it is essential to distinguish the three classes of remainders that are involved in the arguments presented.

It is familiar law that all remainders may be divided into four classes, and at any given moment every remainder belongs to one and to only one class. Rest., Property, § 157. First and simplest is the indefeasibly vested remainder, such as that created by a grant to A for life with

remainder to B. Here B owns the fee subject only to A's life estate; B's interest may be transferred during his lifetime or upon his death, although it does not become a possessory estate until the life tenant dies.

Almost equally simple is the remainder that is vested subject to open and let in afterborn members of the class. Here the typical grant is to A for life with remainder to his *children,* as distinguished from his bodily heirs, issue, etc. This remainder vests upon the birth of A's first child, but it opens up to admit other children later born to A. Thus the membership in the class may increase; but it cannot decrease, since the interest of a child who predeceases A passes by will or intestacy—still subject to open and let in additional children. In our reports the case of *Jenkins* v. *Packington Realty Co.,* 167 Ark. 602, 268 S. W. 620, may be cited as a typical illustration of this type of remainder.

The third class of remainders, one that is vested subject to defeasance, is not involved in the case at bar. See Rest., Property, § 157, Comments *o* to *t.*

Last is the contingent remainder, which is in most cases contingent because the identity of the remaindermen cannot be definitely ascertained until the occurrence of some future event, such as the death of the life tenant. Our leading case is *Horsley* v. *Hilburn, supra,* where the deed was to Marietta Hilburn and the heirs of her body. In that case we adhered to the traditional common law conception of a contingent remainder's character and alienability, as modified by our fee tail statute. Ark. Stats. 1947, § 50-405.

In the case before us the deed was to Sallie Haden "and unto her heirs by her present husband, J. T. Haden." This is manifestly a borderline case; for the reference to Sallie's "heirs" by J. T. Haden could mean either her children, in which case the remainder is vested subject to open, or her bodily heirs in general, in which case the remainder is contingent.

After studying this question for some months we have concluded that, upon the authority of *Shirey* v.

*Clark,* 72 Ark. 539, 81 S. W. 1057, the reference to Sallie Haden's heirs by J. T. Haden meant her children, and therefore the remainder was originally vested subject to open. In the *Shirey* case the conveyance was from A. W. Clark to his wife, Emily Clark, "to have and to hold during her life or widowhood . . . and after her death or future marriage then to the heirs of the said A. Wm. Clark by the said Emily Clark." We held that the remainder was vested rather than contingent, for the reason that the word "heirs" meant children. "What other meaning could attach to the words, 'heirs of said A. W. Clark by the said Emily Clark'? They could only mean the children of the said A. W. Clark by the said Emily Clark then living. The maxim, *'Nemo est haeres viventis'* does not apply here, because the word 'heirs,' as used, evidently means children *in esse.* The intention of the grantor in the deed must prevail; and it is evident by the use of the words 'heirs of said A. W. Clark by the said Emily Clark' he could have meant nothing else than the children of the said A. W. Clark by the said Emily Clark." In several other cases we have held that, in the particular circumstances, a reference to heirs was intended to mean children. *Wyman* v. *Johnson,* 68 Ark. 369, 59 S. W. 250; *Powell* v. *Hayes,* 176 Ark. 660, 3 S. W. 2d 974; *Taylor* v. *Cammack,* 209 Ark. 983, 193 S. W. 2d 323, noted in 1 Ark. L. Rev. 182.

Even though the deed in the *Shirey* case was so similar to the deed to Sallie Haden that we regard the earlier case as controlling, it is nevertheless true that the *Shirey* opinion is open to a dual interpretation. There we said that the reference to A. W. Clark's heirs by Emily Clark could only mean the couple's children *then living.* This language of the opinion, taken literally, could mean that the class was forever limited to the children who were *in esse* when the deed became effective, in which case their interest would have been indefeasibly vested, just as if they had been designated by name in the deed. Yet, on the other hand, the court's reference to the children "then living" may have been an abbreviated way of saying that the estate vested in those children, subject to

opening up to let in afterborn members of the class. The opinion itself suggests that the latter view is the correct one, and an examination of the original transcript dispels all doubt. The transcript shows that one of the children, Homer P. Clark, was not born until five years after the execution of the deed to Emily Clark, but this child was awarded a proportionate share in the property. Since this child was not *in esse* when the deed became effective, it is manifest that the court actually construed the deed to create a remainder that was vested subject to open.

In spite of the close similarity between the deed in the *Shirey* case and the one now in issue the appellants advance an ingenious and not altogether illogical reason for distinguishing the earlier case. There the deed was to Emily Clark with remainder to *A.W.*'s heirs by her. Here the deed was to Sallie Haden with remainder to her heirs by J. T. Haden. The rather subtle distinction now urged is that in the *Shirey* case the remainder was to the heirs of the life tenant's *husband,* while in this case the remainder is to the life tenant's *own* heirs. The argument is that at common law a deed to A for life with remainder to *A*'s bodily heirs created a fee tail, but a deed to A for life with remainder to *B*'s bodily heirs did not create a fee tail. Hence, say the appellants, the *Shirey* case did not really come within our fee tail statute, which vests the fee in him to whom the estate tail would first pass according to the course of the common law. Ark. Stats., § 50-405.

We recognize the adroitness of counsel's argument, but we are not all convinced that the distinction proposed is really applicable to the *Shirey* case. In the suggested common law illustration, that of a deed to A for life with remainder to B's bodily heirs, there is certainly a tacit assumption that B's bodily heirs are not exactly the same persons as A's bodily heirs. Yet in the *Shirey* case that assumption would not be well founded. There the deed was to Emily Clark and A. W. Clark's heirs by her, which in practical effect is precisely the same as a deed to Emily and her heirs by him. As far as the grantor's intention is concerned, it makes no difference whether he refers to

the wife's children by the husband or the husband's children by the wife. Of course the rules of conveyancing are to some extent inflexible, and not infrequently it is necessary to give effect to form rather than to intent. But it would involve an altogether undue deference to form alone to give controlling effect to the distinction now urged by counsel.

We conclude that the deed to Sallie Haden and to her heirs by J. T. Haden was in effect a deed to Sallie and her children by him, creating a remainder that was vested subject to open. At common law such a vested remainder was alienable, and with a lone exception our decisions have adhered to the common law view. In the *Shirey* case we recognized that the vested remainder of the life tenant's children would pass by descent. There one of the children had predeceased Emily Clark, and we held that the deceased child's son succeeded to the interest of his father. In the next case, *Jenkins* v. *Packington Realty Co.*, 167 Ark. 602, 268 S. W. 620, wherein the remainder was vested subject to open, it was held that the only child of the life tenants could convey his interest.

In a third case, *Landers* v. *People's Bldg. & Loan Ass'n*, 190 Ark. 1072, 81 S. W. 2d 917, the granting clause in the deed was to "Willie Millette and the heirs of her body now born and that may be born unto her." There were, however, two other references in the deed to Willie Millette and her children, who were named. Construing the deed as a whole, and without intending to impair the rule of *Horsley* v. *Hilburn*, we held that the children "took a vested interest, which would open up and let in other children that were born thereafter," and that the children could convey their interest before the termination of the life estate. The rule was again applied in *Greer* v. *Parker*, 209 Ark. 553, 191 S. W. 2d 584, where, it being agreed that the life tenant was past child-bearing age, we held that she and her children could convey a merchantable title.

Opposed to these four decisions stands only the case of *Deener* v. *Watkins*, 191 Ark. 776, 87 S. W. 2d 994, noted

in 1 Ark. L. Rev. 188. The deed was to Dora Watkins for life and at her death to her children—the classic language that is used to create a remainder that is vested subject to open. We said, however, that the children's interest was not vested but contingent and therefore was inalienable until the death of the life tenant. The *Deener* case is contrary to the common law as well as to our own earlier and later cases; our efforts to distinguish it have not been successful. We think it best to overrule that decision.

Inasmuch as the interest of Sallie Haden's children was vested and transferable, it passed to Sallie Haden by the deeds of 1912 and 1918. One of the appellants, Mrs. Cockrill, seeks to disaffirm the 1912 transaction upon the ground that she was then a minor, but that disability did not exist in 1918. It is evident that in that year the entire ownership of the land rested in Sallie Haden and her four surviving children. The original deed gave Sallie a life estate with a remainder that eventually vested in the seven children that were at one time or another living after 1895. Three of the children died in infancy. The property being a new acquisition, *Wheelock* v. *Simons*, 75 Ark. 19, 86 S. W. 830, under the law then in force the estate of the infant children passed first to their father for life, then to their mother for life, and then to their brothers and sisters. Kirby's Digest, §§ 2636 and 2645; *Kelly's Heirs* v. *McGuire*, 15 Ark. 555. We need not set out the undivided interests that resulted from the deaths of the three children, for it is manifest that the 1918 quitclaim deed merged the fee simple in Sallie Haden. She conveyed to the Bank in 1926, and upon that title the appellees are entitled to prevail.

Affirmed.

WARD, J., dissents.